UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CHARTER SCHOOL CAPITAL, INC.,
an active Delaware corporation,

CASE NO. _____

      Plaintiff,

v.

TRANSITIONS COMMUNITY CHARTER
SCHOOLS, INC., an active Florida
non profit corporation; JORGE RODRIGUEZ,
individually; GILBERTO S. FAGUNDO, individually;
DIANA M. HELLER, individually; WILLIAM R.
CUMMINGS, individually; FRANCISCO J.
MORE, JR., individually; IRSI RODRIGUEZ,
Individually; HOWARD ROSS, individually;

      Defendants.
_____/

## COMPLAINT

Plaintiff, Charter School Capital, Inc. ("CSC"), sues Transitions Community Charter Schools, Inc. ("Transitions"), Jorge Rodriguez ("J. Rodriguez"), Gilberto S. Fagundo ('Fagundo"), Diana M. Heller ("Heller"), William R. Cummings ("Cummings"), Francisco J. More, Jr. ("More"), Irsi Rodriguez ("I. Rodriguez"), and Howard Ross ("Ross") for breach of contract, conversion, and civil theft and alleges:

## NATURE OF ACTION

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 12 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest and costs.

2. Venue is proper in the Southern District of Florida under 28 § U.S.C. § 1391(b)(1) because all Defendants reside in Florida and specifically, all Defendants reside in the Southern District of Florida.

**PARTIES**

3. Plaintiff CSC is a for-profit Delaware corporation that operates a business financing charter schools located throughout the country, including Florida.

4. Defendant Transitions, is an active Florida not for profit corporation that owns and operates a charter school in Palm Beach County, Florida.

5. Defendant J. Rodriguez is a Director for Transitions and upon information and belief is a resident of Palm Beach County, Florida.

6. Defendant Fagundo is a Director for Transitions and upon information and belief is a resident of Palm Beach County, Florida.

7. Defendant Heller is a Chair for Transitions and upon information and belief is a resident of Palm Beach County, Florida.

8. Defendant Cummings is a Director for Transitions and upon information and belief is a resident of Palm Beach County, Florida.

9. Defendant More is the Secretary for Transitions and upon information and belief is a resident of Palm Beach County, Florida.

10. Defendant I. Rodriguez is a Director for Transitions and upon information and belief is a resident of Palm Beach County, Florida.

11. Defendant Ross is a Director for Transitions and upon information and belief is a resident of Palm Beach County, Florida.

**GENERAL FACTUAL ALLEGATIONS**

12. CSC is in the business of factoring.

13. Factoring is a method of financing where accounts receivable are purchased at a discount and then profit is realized when the discounted accounts receivable are paid in full.

14. The purchaser of the accounts receivable becomes the owner and thus has the right to expect payment directly from the entity obligated to pay the accounts receivable.

15. Defendant, Transitions operates a charter school in Palm Beach County, Florida.

16. As the operator of a charter school, Transitions receives funding from its school district sponsor.

17. Transitions' school district sponsor is the School Board of Palm Beach County, Florida ("District Sponsor").

18. On September 18, 2014, CSC entered into a Receivables Purchase Agreement ("RPA") with Transitions. A copy of the September 18, 2014, RPA is attached as Exhibit A.

19. In addition to executing the RPA, the parties executed several Bills of Sale, and entered into the following other agreements: Officer's Certificate, a Terms Letter, an Amended and Restated Terms Letter and a Second Amended and Restated Terms Letter. These documents are collectively attached as Composite Exhibit B.

20. The documents attached as Exhibit A and Composite Exhibit B are collectively referred to herein as the "Transaction Documents."

21. The RPA classifies the transaction between the parties, i.e. the purchase of the receivables, as "Sales." See RPA § 2.01(a), Exh. A to RPA (Form Bill of Sale).

22.     The RPA requires Transitions to direct the District Sponsor to make payments to a separate, specified, segregated bank account, notify the District Sponsor of the sale in writing and provide proof of the foregoing.  See RPA §§ 3.01(e), 4.02(a)(v), 5.01(d), Exh. C to RPA.

23.     On September 18, 2014, an initial transaction occurred between CSC and Transitions.  As part of that transaction, CSC purchased from Transitions the October, November and December Florida Education Finance Program ("FEFP") payments as defined in the Transaction Documents.[1]  The total up front purchase price was $95,854.  The Face Value of this purchase was $98,400.  See Comp. Exh. B (Bill of Sale).

24.     CSC is due the Face Value, as stated in the Bills of Sale, which are attached as part of the Transaction Documents.  See Comp. Exh. B (Bill of Sale).

25.     On November 3, 2014, another transaction occurred between CSC and Transitions.  As part of that transaction, CSC purchased from Transitions the January 2015 FEFP payments as defined in the Transaction Documents.  The total up front purchase price was $33,002.  The Face Value of this purchase was $34,000.  See Comp. Exh. B (Bill of Sale).

26.     As part of the November 3, 2014, transaction, CSC collected $32,800 from the funding which was for the the October 2014 receivables purchase.  See Comp. Exh. B (Bill of Sale).

27.     On December 5, 2014, another transaction occurred between CSC and Transitions.  As part of that transaction, CSC purchased from Transitions the February 2015 FEFP payments as defined in the Transaction Documents.  The total up front purchase price was $36,312.  The Face Value of this purchase was $37,400.  See Comp. Exh. B (Bill of Sale).

---

[1] The FEFP is the name of the payment made by the District Sponsor.

4

28.     As part of the December 5, 2014, transaction, CSC collected $32,800 from the funding which was for the November 2014 receivables purchase.  See Comp. Exh. B (Bill of Sale).

29.     Upon information and belief, the District Sponsor has made payments to Transitions in the amount of $32,800.

30.     Despite its obligations, Transitions has not forwarded these funds to CSC.

31.     In December 2014, Transitions, without any notification to CSC, informed the parents of its students and the District Sponsor that it was closing.

32.     Transitions' closure means that Transitions will no longer receive further FEFP payments from its District Sponsor.

33.     Pursuant to the Transaction Documents, the future FEFP payments are the property of CSC.

34.     To that end, CSC is presently owed a principal amount of One Hundred Four Thousand Two Hundred dollars and 00/100 ($104,200.00).  The Transaction Documents allow for interest at 18%.  CSC is owed accrued interest as of the filing of this Complaint, and interest continues to accrue at the above-referenced rate of 18%.

35.     Pursuant to the Transaction Documents, CSC is entitled to an award of reasonable attorney's fees and costs.

## COUNT I – BREACH OF CONTRACT
**(Against Defendant TRANSITIONS)**

36.     CSC re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 36 above.

37.     On September 18, 2014, the parties entered into a series of agreements collectively known as the Transaction Documents.

38. Transitions has not followed the terms of the Transaction Documents by failing to submit CSC's monies directly to CSC.

39. Instead, Transitions has wrongfully retained CSC's monies.

40. Additionally, Transitions has not paid CSC the entirety of its monies, i.e. the remaining FEFP payments due Transitions had Transitions remained open.

41. Transitions sold CSC the above-referenced FEFP payments.

42. Transitions' decision to close its Charter School has resulted in CSC being deprived its property.

43. Transitions has failed to provide CSC its property.

44. Thus, Transitions has breached the Transaction Documents and this breach has damaged CSC.

WHEREFORE, CSC demands a judgment against Transitions for the value of its property, attorneys' fees, court costs, pre and post judgment interest and any further relief the Court deems appropriate.

### COUNT II – CONVERSION OF PROPERTY
**(Against All Defendants)**

45. CSC re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 36 above.

46. This is an action against all Defendants for the intentional tort of conversion.

47. This cause of action is brought against Defendants J. Rodriguez, Fagundo, Heller, Cummings, More, I. Rodriguez, and Ross pursuant to Florida Statute §617.0834(1)(b)(3).

48. As stated above, and documented in the Transaction Documents, CSC is the owner of certain payments that have been made to, and/or should have been made to Transitions.

49. Transitions is currently in possession of at least some of those payments and has not, as it is required to, delivered the monies to CSC.

50. Additionally, Transitions deliberate and overt act of closing its Charter School had the direct result of depriving CSC of its purchased property, i.e. the future FEFP payments.

51. Therefore, CSC has suffered damage from Transitions' act of failing to pay CSC the FEFP payment already in its possession and from Transitions' deliberate and overt act of closing its Charter School.

52. Defendants J. Rodriguez, Fagundo, Heller, Cummings, More, I. Rodriguez, and Ross are all personally liable for the conduct of Transitions.

53. Specifically, pursuant to Florida Statute §617.0834(1)(b)(3), all of the individual Defendants, as either officers, Chairs or directors acted recklessly when they failed to stop Transitions from using the property of CSC and when they failed to stop the closure of Transitions, which closure directly resulted in the depriving CSC of its property.

54. The failure of the individual Defendants to act, and their authorization of the use of CSC's property for anything other than payment to CSC, and their decision to close Transitions' Charter School exhibited a wanton and willful disregard for CSC's property.

55. It is known to all of the individual Defendants that CSC's funds were used for some purpose other than to pay CSC.  It is also known to all Defendants that the closure of Transitions' Charter School would result in the deprivation of CSC's property.

56. All of the individual Defendants knew that by closing Transitions' Charter School it was highly probable that harm would follow, either by their explicit authorization for the closure or their failure to act in stopping the closure.

57. CSC reserves the right pursuant to Florida Statute §768.72, to later make an evidentiary proffer to add a claim for punitive damages.

WHEREFORE, CSC demands a judgment against Transitions for the value of its property, compensatory damages, attorney's fees and costs, pre and post judgment interest and any further relief the Court deems appropriate.

### COUNT III – CIVIL THEFT FLORIDA STATUTE § 772.11
**(Against All Defendants)**

58. CSC re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 36 above.

59. On or about December 18, 2014, CSC drafted and sent out for service a Civil Theft Demand Letter ("Demand") pursuant to Florida Statute § 772.11, directed to all Defendants. (A copy of the Demand is attached herewith as Exhibit C.)

60. Each Defendant was served with the Demand on different days via both email and Federal Express.

61. It has been at least thirty (30) days since the last Defendant was served with the Demand.

62. Pursuant to Florida Statute § 812.014(1)(a), by accepting the District Sponsors payment of $32,800, with the knowledge that Transitions was going to cease operations, and failing to provide the $32,800 to CSC, Defendants knowingly obtained the property of CSC with the intent to deprive CSC of the used and benefit of that property.

63. As is detailed above and in the Transaction Documents, CSC is the owner of the payments from the District Sponsor to Transitions.

64. Therefore, Defendants were aware that the payment of $32,800, was in fact, CSC's property.

65. Upon information and belief, Defendants were aware that they were going to close Transitions at the time they accepted the $32,800 payment from the District Sponsor.

66. Therefore, Defendants believed that they could get away with not giving CSC its property since Transitions would be closing.

67. The actions of the Defendants were intentional and were specifically designed to deprive CSC of its property.

68. Pursuant to Florida Statute § 772.11(1), CSC is entitled to an award of treble damages and reasonable attorney's fees and court costs.

WHEREFORE, CSC demands a judgment against Transitions for the value of its property, treble damages, compensatory damages, attorney's fees and costs, pre and post judgment interest and any further relief the Court deems appropriate.

Respectfully Submitted,

/s/Michael Elkins
**MICHAEL L. ELKINS**
Florida Bar No. 0523781
melkins@bmolaw.com
Bryant Miller Olive P.A.
Suntrust International Center
1 Southeast 3rd Avenue
Suite 2200
Miami, Florida 33131
Telephone (305) 374-7349
Facsimile (305) 374-0895
*Attorneys for Plaintiff Charter School Capital, Inc.*